FILED

*fee paid 1/5-21*

1  | Alexander B. Kasdan
2  | 614 Palisades Drive
   | Pacific Palisades, CA 90272
3  | Phone: (3100 770-1327
   | Fax: (310) 496-2434
4  |
   | In Pro Per
5  |

2012 AUG -7  PM 1: 12

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

6
7
8

**UNITED STATES DISTRICT COURT,**

9

**CENTRAL DISTRICT OF CALIFORNIA**

**CV12-6793-GAF (JEMx)**

10  | Alexander B. Kasdan,                     Case No.:
11  |                    Plaintiff            Judge:
                                             Department:
12
13  | vs.                                     **COMPLAINT FOR DAMAGES**

14  | COUNTY OF LOS ANGELES; Philip L.        **First Cause of Action:** Violation of Civil
    | Browning, in his official capacity and as an  Rights (42 U.S.C. § 1983) - Fourteenth
15  | individual; Timmie Saltzman, an individual;  Amendment - Familial Association and
    | Dora Arosco, an individual; Connie      Fabrication of Evidence;
16  | Woodland, an individual; Yolanda Johnson,
    | an individual; Shaunda Allen, an individual;  **Second Cause of Action:** *Monell*-Related
17  | Michelle Harriman, an individual; Pamela  Claims
    | Barris, an individual; Priscilla Ashburn, an
18  | individual; Chaunte Boyd, an individual;  **Third Cause of Action:** Intentional
    | Rosita Brennan, an individual; Ebony     Infliction of Emotional Distress
19  | Crow, an individual; Pauline Davis, an
    | individual; Florann Elkins, an           **Fourth Cause of Action:** Negligent
20  | individual;Thelma Gadson, an individual;  Infliction of Emotional Distress
    | Julie Glazner, an individual; Jamie Hein, an
21  | individual; Yolanda Johnson, an individual;  **Fifth Cause of Action:** Violation of State
    | Robin Kim, an individual; Gary Kirkland,  Civil Rights
22  | an individual; Jannell Maze, an individual;
    | Melanie W. Harewood, an individual;      **Sixth Cause of Action:** Injunctive Relief
23  | Belinda Marquez, an individual; Eric Marts,
    | an individual; Joseph L. Futerman, an    **Seventh Cause of Action:** Violation of the
24  | individual; Frida Mostofi, an individual;  American with Disabilities Act, 42 U.S.C. §
    | Sharon Partush, an individual; Barbara   12131, et seq.
25  | Puckett, an individual; David Saft, an
    | individual; Eleazor Degbor, an individual;  **[JURY TRIAL DEMANDED]**
26  | Barbara Smith, an individual; Carol Tantau,
    | an individual; Bonita Weavingearth, an   Date Action Filed:
27  | individual; Cathy Woillard, an individual;
    | Trish Ploehn, an individual; Jackie
28  | Contreras, an individual; Patrice Grant, an
    | individual; John Cahill, an individual;

1

**COMPLAINT FOR DAMAGES**

*Case No.*

AUG – 7 2012

1 | Joseph Mackenzie, an individual; Joshua
2 | Om Cox, an individual;
  | Peter Ferrera, an individual; Jaclyn P
3 | Guerriero, an individual; Lisa Margolis, an
  | individual; Natalie Abrahami, an individual;
4 | Daenette Page, an individual; Lou Graham,
  | an individual; Pat Butler, an individual;
5 | Cathy Garcia, an individual; Tania Kasdan,
  | an individual; Teens Happy Homes, an
6 | individual; CHILDREN'S LAW CENTER
  | OF LOS ANGELES, an entity of unknown
7 | form; Leslie Heimov, an individual, David
  | Estep, an individual; Lloyd Bedell, an
8 | individual; Patricia O'Connell, an
  | individual; and DOES 1 through 100,
9 | inclusive
  |                    Defendants

Plaintiff Alexander B. Kasdan alleges as follows:

## JURISDICTION

1.     Alexander B. Kasdan brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the Defendants' deprivation of his civil rights arising under the United States Constitution. at all times herein acting under color of state law, of rights secured to plaintiff under the United States Constitution, including the First, Fourth, Fifth, and Fourteenth Amendments, and under federal and state law where applicable.

2.     Jurisdiction is conferred on this Court by 28 U.S.C. sections 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331(a) because claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over those claims of Plaintiff based on state laws, pursuant to 28 U.S.C. Section 1367.

## PARTIES

3.     At all relevant times, Plaintiff, Alexander B. Kasdan, was a resident of the County of Los Angeles.

**COMPLAINT FOR DAMAGES**

*Case No.*

1       4.    At all times applicable herein, the COUNTY OF LOS ANGELES was

2   and is a public entity ("COUNTY");

3       5.    At all times applicable herein, the DEPARTMENT OF SOCIAL

4   SERVICES ("DSS" or "Department of Social Services") and or the

5   DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("DCFS"or "the

6   Department") was and is a subdivision or entity of Defendant COUNTY OF LOS

7   ANGELES, STATE OF CALIFORNIA.

8       6.    At all times applicable herein Defendant Philip L. Browning, was, and

9   remains, the Director of County of Los Angles County DCFS and that he has

10   supervisory responsibility and authority over DCFS and its social workers and

11   employees. Plaintiff is informed and believes and on such basis alleges that

12   Browning, at all relevant times mentioned herein, had the power to promulgate and

13   implement policies governing the conduct of Los Angeles County social workers in

14   relation to the agency's handling of juvenile dependency matters. On further

15   information and belief, Plaintiffs allege that Browning resides in Los Angeles

16   County, and is an officer, agent, and employee of Los Angeles County, and DCFS.

17   Defendant Browning is sued herein in both his individual capacity and his official

18   capacity as director of the Los Angeles Department of Social Services.

19       7.    At all times applicable herein, Defendant, Timmie Saltzman, was an

20   individual residing, on information and belief, in Los Angeles County, and an

21   officer, agent, and employee of Los Angeles County and DCFS. Defendant

22   Saltzman is sued herein in both her individual capacity and in her official capacity as

23   an employee of Los Angeles County.

24       8.    At all times applicable herein, Defendant, Dora Arosco, was an

25   individual residing, on information and belief, in Los Angeles County, and an

26   officer, agent, and employee of Los Angeles County and DCFS. Defendant Arosco

27   is sued herein in both her individual capacity and in her official capacity as an

28   employee of Los Angeles County.

**COMPLAINT FOR DAMAGES**

*Case No.*

1        9.    At all times applicable herein, Defendant, Priscilla Asburn, was, and

2 remains, a Supervising Social Worker of Los Angeles County DCFS. Defendant

3 Ashburn was an individual residing, on information and belief, in Los Angeles

4 County, and an officer, agent, and employee of Los Angeles County and DCFS.

5 Defendant Ashburn is sued herein in both her individual capacity and in her official

6 capacity as an employee of Los Angeles County.

7        10.    At all times applicable herein, Defendant, Chante Boyd, was an

8 individual residing, on information and belief, in Los Angeles County, and an

9 officer, agent, and employee of Los Angeles County and DCFS. Defendant Boyd is

10 sued herein in both her individual capacity and in her official capacity as an

11 employee of Los Angeles County.

12        11.    At all times applicable herein, Defendant, Rosita Brennan, was an

13 individual residing, on information and belief, in Los Angeles County, and an

14 officer, agent, and employee of Los Angeles County and DCFS. Defendant Brennan

15 is sued herein in both her individual capacity and in her official capacity as an

16 employee of Los Angeles County.

17        12.    At all times applicable herein, Defendant, Ebony Crow, was an

18 individual residing, on information and belief, in Los Angeles County, and an

19 officer, agent, and employee of Los Angeles County and DCFS. Defendant Crow is

20 sued herein in both her individual capacity and in her official capacity as an

21 employee of Los Angeles County.

22        13.    At all times applicable herein, Defendant, Pauline Davis, was an

23 individual residing, on information and belief, in Los Angeles County, and an

24 officer, agent, and employee of Los Angeles County and DCFS. Defendant Davis is

25 sued herein in both her individual capacity and in her official capacity as an

26 employee of Los Angeles County.

27        14.    At all times applicable herein, Defendant, Pamela Barris, was an

28 individual residing, on information and belief, in Los Angeles County, and an

**COMPLAINT FOR DAMAGES**

*Case No.*

1  officer, agent, and employee of Los Angeles County and DCFS. Defendant Barris

2  is sued herein in both her individual capacity and in her official capacity as an

3  employee of Los Angeles County.

4       15.   At all times applicable herein, Defendant, Connie Woodland, was an

5  individual residing, on information and belief, in Los Angeles County, and an

6  officer, agent, and employee of Los Angeles County and DCFS. Defendant

7  Woodland is sued herein in both her individual capacity and in her official capacity

8  as an employee of Los Angeles County.

9       16.   At all times applicable herein, Defendant, Yolanda Johnson, was an

10  individual residing, on information and belief, in Los Angeles County, and an

11  officer, agent, and employee of Los Angeles County and DCFS. Defendant Johnson

12  is sued herein in both her individual capacity and in her official capacity as an

13  employee of Los Angeles County.

14       17.   At all times applicable herein, Defendant, Shaunda Allen, was an

15  individual residing, on information and belief, in Los Angeles County, and an

16  officer, agent, and employee of Los Angeles County and DCFS. Defendant Allen is

17  sued herein in both her individual capacity and in her official capacity as an

18  employee of Los Angeles County.

19       18.   At all times applicable herein, Defendant, Michelle Harriman, was an

20  individual residing, on information and belief, in Los Angeles County, and an

21  officer, agent, and employee of Los Angeles County and DCFS. Defendant

22  Harriman is sued herein in both her individual capacity and in her official capacity

23  as an employee of Los Angeles County.

24       19.   At all times applicable herein, Defendant, Thelma Gadson, was an

25  individual residing, on information and belief, in Los Angeles County, and an

26  officer, agent, and employee of Los Angeles County and DCFS. Defendant Gadson

27  is sued herein in both her individual capacity and in her official capacity as an

28  employee of Los Angeles County.

**COMPLAINT FOR DAMAGES**

*Case No.*

20.    At all times applicable herein, Defendant, Julie Glazner, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Glazner is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

21.    At all times applicable herein, Defendant, Jamie Hein, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Hein is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

22.    At all times applicable herein, Defendant, Robin Kim, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Kim is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

23.    At all times applicable herein, Defendant, Gary Kirkland, was and remains an Assistant Regional Director of DCFS of Los Angeles County. Defendant Kirkland was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Kirland is sued herein in both his individual capacity and in his official capacity as an employee of Los Angeles County.

24.    At all times applicable herein, Defendant, Belinda Marquez, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Marquez is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

25.    At all times applicable herein, Defendant, Eric Marts, was and remains an Assistant Director of DCFS of Los Angeles County.  Defendant Marts was an

6
**COMPLAINT FOR DAMAGES**
Case No.

1  individual residing, on information and belief, in Los Angeles County, and an

2  officer, agent, and employee of Los Angeles County and DCFS. Defendant Marts is

3  sued herein in both his individual capacity and in his official capacity as an

4  employee of Los Angeles County.

5      26.    At all times applicable herein, Defendant, Joseph L Futerman, MFT,

6  Ph.D., was and remains an individual residing, on information and belief, in Los

7  Angeles County, and an officer, agent, and employee of Los Angeles County and

8  DCFS. Defendant Futerman is sued herein in both his individual capacity and in his

9  official capacity as an employee, agent and contractor of Los Angeles County.

10     27.    At all times applicable herein, Defendant, Frida Mostofi, was an

11  individual residing, on information and belief, in Los Angeles County, and an

12  officer, agent, and employee of Los Angeles County and DCFS. Defendant Mostofi

13  is sued herein in both her individual capacity and in her official capacity as an

14  employee of Los Angeles County.

15     28.    At all times applicable herein, Defendant, Sharon Partush, was an

16  individual residing, on information and belief, in Los Angeles County, and an

17  officer, agent, and employee of Los Angeles County and DCFS. Defendant Partush

18  is sued herein in both her individual capacity and in her official capacity as an

19  employee of Los Angeles County.

20     29.    At all times applicable herein, Defendant, Barbara Puckett, was an

21  individual residing, on information and belief, in Los Angeles County, and an

22  officer, agent, and employee of Los Angeles County and DCFS. Defendant Puckett

23  is sued herein in both her individual capacity and in her official capacity as an

24  employee of Los Angeles County.

25     30.    At all times applicable herein, Defendant, David Saft, was an

26  individual residing, on information and belief, in Los Angeles County, and an

27  officer, agent, and employee of Los Angeles County. Defendant Saft is sued herein

28

**COMPLAINT FOR DAMAGES**

*Case No.*

1 in both his individual capacity and in his official capacity as an employee of Los

2 Angeles County.

3       31.   At all times applicable herein, Defendant, Peter Ferrera, was an

4 individual residing, on information and belief, in Los Angeles County, and an

5 officer, agent, and employee of Los Angeles County. Defendant Ferrera is sued

6 herein in both his individual capacity and in his official capacity as an employee of

7 Los Angeles County.

8       32.   At all times applicable herein, Defendant, Eleazer Christian Degbor,

9 was an individual residing, on information and belief, in Los Angeles County, and

10 an officer, agent, and employee of Los Angeles County. Defendant Degbor is sued

11 herein in both his individual capacity and in his official capacity as an employee of

12 Los Angeles County.

13       33.   At all times applicable herein, Defendant, Kane Phelps, was an

14 individual residing, on information and belief, in Los Angeles County, and an

15 officer, agent, and employee of Los Angeles County and DCFS. Defendant Phelps is

16 sued herein in both his individual capacity and in his official capacity as an

17 employee of Los Angeles County.

18       34.   At all times applicable herein, Defendant, Barbara Smith, was an

19 individual residing, on information and belief, in Los Angeles County, and an

20 officer, agent, and employee of Los Angeles County and DCFS. Defendant Smith is

21 sued herein in both her individual capacity and in her official capacity as an

22 employee of Los Angeles County.

23       35.   At all times applicable herein, Defendant, Catherine Woillard, was an

24 individual residing, on information and belief, in Los Angeles County, and an

25 officer, agent, and employee of Los Angeles County and DCFS. Defendant Woillard

26 is sued herein in both her individual capacity and in her official capacity as an

27 employee of Los Angeles County.

28

**COMPLAINT FOR DAMAGES**

*Case No.*

36.     At all times applicable herein Defendant Trish Ploehn, was, the Director of County of Los Angles County DCFS and that she has supervisory responsibility and authority over DCFS and its social workers and employees. Plaintiff is informed and believes and on such basis alleges that Ploehn, at all relevant times mentioned herein, had the power to promulgate and implement policies governing the conduct of Los Angeles County social workers in relation to the agency's handling of juvenile dependency matters. On further information and belief, Plaintiff alleges that Ploehn resides in Los Angeles County, and is an officer, agent, and employee of Los Angeles County, and DCFS. Defendant Ploehn is sued herein in both her individual capacity and her official capacity as director of the Los Angeles Department of Social Services.

37.     At all times applicable herein Defendant Jackie Contreras, was, and remains, the Director of County of Los Angles County DCFS and that she has supervisory responsibility and authority over DCFS and its social workers and employees. Plaintiff is informed and believes and on such basis alleges that Browning, at all relevant times mentioned herein, had the power to promulgate and implement policies governing the conduct of Los Angeles County social workers in relation to the agency's handling of juvenile dependency matters. On further information and belief, Plaintiff alleges that Contreras resides in Los Angeles County, and is an officer, agent, and employee of Los Angeles County, and DCFS. Defendant Contreras is sued herein in both her individual capacity and her official capacity as director of the Los Angeles Department of Social Services.

38.     At all times applicable herein, Defendant, Patrice Grant, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS. Defendant Grant is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

**COMPLAINT FOR DAMAGES**
*Case No.*

39.   At all times applicable herein, Defendant, Lisa Margolis, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS.  Defendant Margolis is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

40.   At all times applicable herein, Defendant, Natalie Abrahami, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS.  Defendant Abrahami is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

41.   At all times applicable herein, Defendant, Daenette Page, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and DCFS.  Defendant Page is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

42.   At all times applicable herein, Defendant, Bonita Weavingearth, LCSW, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and Edelman Mental Health Center. Defendant Weavingearth is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

43.   At all times applicable herein, Defendant, Janell Maze, is an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and Edelman Mental Health Center.  Defendant Maze is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

44.   At all times applicable herein, Defendant, Melanie W. Harewood, LCSW, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County and Edelman

10

**COMPLAINT FOR DAMAGES**

*Case No.*

Mental Health Center. Defendant Harewood is sued herein in both her individual capacity and in her official capacity as an employee of Los Angeles County.

45.   At all times applicable herein, Defendant, Carol Tantau, was an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and contractor of Los Angeles County. Defendant Tantau is sued herein in both her individual capacity and in his official capacity as a contractor of Los Angeles County.

46.   At all times applicable herein, Defendant, Jaclyn P. Guerriero was and remains an individual residing, on information and belief, in Los Angeles County, and an officer, agent, and employee of Los Angeles County. Defendant Guerriero is sued herein in both her individual capacity and in her official capacity as an employee, agent and contractor of Los Angeles County.

47.   At all times applicable herein, Defendant John Cahill, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County. Defendant Cahill has made a number of false and fraudulent representations to the Court and is sued herein in both his individual capacity and as an agent of Los Angeles County.

48.   At all times applicable herein, Defendant Joseph D. Mackenzie, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County. Defendant is sued herein in both his individual capacity and as an agent of Los Angeles County.

49.   At all times applicable herein, Defendant John Riley, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County.  Defendant Riley is sued herein in both his individual capacity and as an agent of Los Angeles County.

11

**COMPLAINT FOR DAMAGES**

Case No.

50. At all times applicable herein, Defendant Helena Rho, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County. Defendant Rho has made a number of false and fraudulent representations to the Court and is sued herein in both her individual capacity and as an agent of Los Angeles County.

51. At all times applicable herein, Defendant Timothy Martella, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County. Defendant Martella served as supervising attorney of Defendant Rho, is fully aware of the facts of the case and has made a number of false and fraudulent representations to the Court and is sued herein in both his individual capacity and as an agent of Los Angeles County.

52. At all times applicable herein, Defendant Christina Curtis, was an individual residing, on information and belief, in Los Angeles County, an attorney and Officer of the Court, and an agent of the DCFS and Los Angeles County. Defendant Curtis is sued herein in both his individual capacity and as an agent of Los Angeles County.

53. At all times mentioned herein, CHILDREN'S LAW CENTER OF LOS ANGELES (CLCLA) was and is a nonprofit, public interest law corporation created and funded by the Los Angeles County SUPERIOR Court to serve as appointed minors' counsel for Los Angeles County's children who are suspected of being abused and or neglected. The duties of CLCLA attorneys are set forth in WIC 317(e) et seq.

54. At all times applicable herein Defendant Leslie Starr-Heimov ("Heimov") was, and remains, the Director of CLCLA. She has supervisory responsibility and authority over CLCLA and its employees. Plaintiff is informed and believes and on such basis alleges that Heimov, at all relevant times mentioned

12

1  herein, had the power to promulgate and impllpement policies directing  the conduct

2  of CLCLA staff in relation to the centers' representing children in juvenile

3  dependency matters. On further information and belief, Plaintiff alleges that Heimov

4  resides in Los Angeles County, and is an officer, agent, and employee of CLCLA.

5  Defendant Heimov is sued herein in both her individual capacity and her official

6  capacity as director of CLCLA.

7       55.    At all times applicable herein Defendant David Estep was, and

8  remains, the Firm Director of  CLCLA. He has supervisory responsibility and

9  authority over CLCLA employees. Plaintiff is informed and believes and on such

10  basis alleges that Estep, at all relevant times mentioned herein, had the power and

11  responsibility to oversee, train and direct the conduct of CLCLA staff in relation to

12  the firm's representation of the Plaintiff's children. On further information and

13  belief, Plaintiff alleges that Estep resides in Los Angeles County, and is an officer,

14  agent, and or employee of CLCLA. Defendant Estep is sued herein in both his

15  individual capacity and his official capacity as Firm Director of CLCLA.

16       56.    At all times applicable herein Defendant Lloyd Bedell was, and

17  remains, an Attorney Supervisor at CLCLA. He has supervisory responsibility and

18  authority over CLCLA attorneys. Plaintiff is informed and believes and on such

19  basis alleges that Bedell, at all relevant times mentioned herein, had the power and

20  responsibility to oversee and supervise the conduct of CLCLA attorney Patricia

21  O'Connell, among others, in relation to his firm's representation of the minors before

22  the Juvenile Dependency Court in the Kasdan matter. On further information and

23  belief, Plaintiffs allege that Bedell resides in Los Angeles County, and is an officer,

24  agent, and or employee of CLCLA. Defendant Bedell is sued herein in both his

25  individual capacity and his official capacity as an Attorney Supervisor at CLCLA.

26       57.    At all times mentioned herein, Defendant, Patricia O'Connell was

27  employed as an attorney at CLCLA in the CLCLA law firm. At all times mentioned

28  herein, O'Connell was the appointed minor's counsel for MINORS. Plaintiff is

13

Case No.

1  informed and believes that O'Connell is and was a resident of Los Angeles County.
2  Defendant O'Connell is sued herein in both her individual capacity and her official
3  capacity as an attorney at CLCLA.

4      58.   At all times applicable herein, Defendant, Florann Elkins, was an
5  individual residing, on information and belief, in Los Angeles County, and an
6  officer, agent, and employee of Children's Bureau Foster Family Agency, a
7  contractor to the DCFS of Los Angeles County. Defendant Elkins is sued herein in
8  both her individual capacity and in her official capacity as an agent of Los Angeles
9  County.

10      59.   At all times applicable herein, Defendant, Lou Graham was and
11  remains the Director of Children Bureau Foster Family Agency, a contractor to Los
12  Angeles County and DCFS. Defendant Graham was an individual residing, on
13  information and belief, in Los Angeles County, and an officer, agent, and employee
14  of of Los Angeles County. Defendant Graham is sued herein in both her individual
15  capacity and in her official capacity as an agent of Los Angeles County.Lou
16  Graham, Director, Children's Bureau.

17      60.   At all times applicable herein, Defendant, Pat Butler, was and remains
18  a Director of Sojourn Services for Battered Women and Children. Defendant Butler
19  was an individual residing, on information and belief, in Los Angeles County, and
20  an officer, agent, and contractor of Los Angeles County. Defendant Butler is sued
21  herein in both her individual capacity and in his official capacity as a contractor of
22  Los Angeles County.

23      61.   At all times applicable herein, Defendant, Cathy Garcia, was an
24  individual residing, on information and belief, in Los Angeles County, and an
25  officer, agent, and employee of Teen Happy Homes Foster Family Agency, a
26  contractor to the DCFS of Los Angeles County. Defendant Garcia is sued herein in
27  both her individual capacity and in her official capacity as an agent of Los Angeles
28  County.

**COMPLAINT FOR DAMAGES**

*Case No.*

62.    At all times applicable herein, Defendant Joshua Om Cox was an individual residing, on information and belief, in Los Angeles County, and was an agent of the DCFS and Los Angeles County. Defendant Cox made a number of false and fraudulent representations to the Court under the penalty of perjury and is sued herein in both his individual capacity and as an agent of Los Angeles County.

63.    At all times applicable herein, Defendant Tania Kasdan, was an individual residing, on information and belief, in Los Angeles County. Defendant Kasdan made a number of false and fraudulent representations to the DCFS and the Court under penalty of perjury and is sued herein in both her individual capacity and as an agent of Los Angeles County.

64.    Hereinafter, when referred to collectively, the Defendants identified in paragraphs 4 through 45, above, will be referred to as "GOVERNMENT DEFENDANTS."

65.    Hereinafter, when referred to collectively, the Defendants identified in paragraphs 46 through 64, above, will be referred to as "PRIVATE DEFENDANTS."

66.    Plaintiff is informed and believes and on such basis alleges that each of the above named Defendants were at all times acting under color of law in committing the acts herein alleged, and, that in doing the things herein alleged, Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of Los Angeles County or were acting in joint collaboration with the remaining Defendants. Specifically, Plaintiff is informed and believes and thereon alleges that each of the above named defendants joined together to voluntarily collaborate in the effort to remove, detain, and continue to detain Plaintiff's children from his care despite the fact that there was no *true* basis to do so; and, each of the Defendants knew, or with the exercise of reasonable care should have known, that the allegations they made against Plaintiff, and/or the other conduct engaged in by these Defendants, and each of them, violated Plaintiffs due

**COMPLAINT FOR DAMAGES**

*Case No.*

1 | process and privacy rights arising under the Fisrt and Fourteenth Amendment to the
2 | United States Constitution.

3 |     67.   As to PRIVATE DEFENDANTS, Plaintiff is informed and believes
4 | and on such basis alleges that up until the moment Defendants, and each of them,
5 | developed the plan to remove Plaintiff's children from his care based on false
6 | allegations and unsupportable innuendo, each of them may have been a "private"
7 | actor under contract with the County of Los Angeles to provide services to the
8 | Kasdan children. However, as soon as the PRIVATE DEFENDANTS voluntarily
9 | joined with the remaining GOVERNMENT DEFENDANTS and participated in
10 | their unlawful and unethical scheme, and jointly collaborated with the remaining
11 | Defendants, and each of them, to effectuate their plan of removing Plaintiff's
12 | children from his care, continuing to detain his children when Defendants, and each
13 | of them, knew there was no basis to do so, destroying his marriage, his family and
14 | his business by unlawful, dishonest, and unethical means, then each of the
15 | PRIVATE DEFENDANTS were also acting under color of law in voluntary
16 | collaboration with the government in the unlawful conduct alleged herein below, and
17 | their liability is coextensive with that of the remaining GOVERNMENT
18 | DEFENDANTS with whom the PRIVATE DEFENDANTS voluntarily
19 | collaborated. Plaintiff is presently unsure of the nature and the extent of the extent of
20 | the common scheme devised by Defendants. All juvenile court and DCFS Agency
21 | record remain confidential until the Juvenile Court orders their release. Plaintiff has
22 | filed, or soon will file, his Petition for Disclosure of Records pursuant WIC 827. It
23 | is anticipated that once those records are released, and all relevant facts are
24 | disclosed, Plaintiff will amend this complaint accordingly.

25 |     68.   In the alternative, the PRIVATE DEFENDANTS, including but not
26 | limited to CLCLA attorneys O'Connell, Bedell, Estep and Heimov, as
27 | court-appointed or authorized service providers, were at all times acting as agents of
28 | the County of Los Angeles or other governmental agency as a private provider of

**COMPLAINT FOR DAMAGES**
Case No.

1   services under contract. Insofar as she/they may have been a government agent,

2   Plaintiff is informed and believe and on such basis allege that the PRIVATE

3   DEFENDANTS, and each of them, were at all times relevant herein, acting under

4   color of law in committing the acts herein alleged, and in so doing, were acting

5   within the course and scope of their duties as a governmental agents and/or

6   employees.

7       69.    Plaintiff is ignorant of the true names and capacities of those

8   Defendants sued herein as DOES 1 through 100, and for that reason have sued such

9   Defendants under such fictitious   names. Plaintiffs reserve their rights, and will

10  seek leave of Court to amend this Complaint to identify said Defendants when their

11  identities have been ascertained. Plaintiff is informed and believes and thereon

12  alleges that each of the fictitiously named Defendants was in some manner liable

13  and legally responsible in that their conduct caused the damages and injuries set

14  forth herein.

15      70.    Plaintiff is further informed and believes and on such basis alleges that

16  each of the above named parties was and is the agent, employee, principal, or

17  employer of each of the remaining Defendants and/or vice versa. In addition,

18  Plaintiff is informed and believes and on such basis alleges that the Defendants

19  named hereinabove, and each of them, are responsible in some manner for the

20  occurrences herein alleged, and that each of the above named Defendants conspired

21  with, and/or aided and/or abetted each of the remaining Defendants in committing

22  the acts herein alleged.

23                          **COMMON ALLEGATIONS**

24      71.    Plaintiff Alexander Kasdan and Tania Zabrodskaya met in Moscow,

25  Russia, in 1997. Alex was a United States citizen working for Credit Suisse First

26  Boston Investment Bank in its Moscow office. Tania, a Russian citizen, was

27  working as the executive assistant to the president of Mapo Bank in Moscow. Prior

28

**COMPLAINT FOR DAMAGES**

*Case No.*

1    to that she held a post as executive assistant to Alisher Usmanov, one of the most

2    successful and wealthy industrialists in the world.[1]

3        72.    Both Tania and Alex were, and are, highly educated and capable

4    people. Tania holds a Master of Science degree in electro-mechanical engineering

5    from the Moscow Mining Institute, which is one of the most prestigious technical

6    universities in Russia. Alex is also an accomplished scholar. Alex studied

7    International Law and International Economics at the University of Florence, Italy,

8    from 1986 to 1987. He returned to the United States to graduate *magna cum laude*

9    from Middlebury College in 1988 with degrees in Economics and Italian. Alex

10   continued his education at Columbia University Law School, where he graduated in

11   1994 with a Juris Doctorate.

12       73.    Alex and Tania, fell in love in Moscow, and were married later that

13   year, on December 6, 1997 and started their life together as a family. It had always

14   been Tania's dream to have children, and together Alex and Tania worked toward

15   getting their lives into a position where Tania could realize that dream.

16       74.    But, Tania, having been previously married, was unable to have

17   children due to her debilitating eating disorders. Tania had been the victim of a

18   severe bulimia and anorexia since she was a child. The disease lingered with her

19   into adulthood. Tania's disease was so terrible, that it left her with no hope and she

20   had attempted to commit suicide on a number of occasions.  Her disease went

21   largely untreated in Russia due to the lack of medical expertise with the illness,

22   which was less prevalent in Russia than in the United States and the overall inferior

23   quality of Russian medicine compared to that in the United States. After doing

24   extensive research Alex and Tania decided to attempt treatment with eating

25   disorders specialists in the United States was the only way to save Tania's life and

26   to given their new family a chance.

27

28
       [1]http://en.wikipedia.org/wiki/Alisher_Usmanov

**COMPLAINT FOR DAMAGES**

*Case No.*

75.    Alex and Tania traveled to New York for a two-week "test" treatment of her eating disorders with John Ryder, Ph.D. and Dr. Felix Kleiman, M.D., among others. It seemed like Tania benefitted from the treatments, so the couple decided to relocate to the United States to get appropriate medical treatment for Tania's condition. Alex was able to find a job in New York as Associate General Counsel at Schlumberger, Inc., a $150 billion NYSE-listed company.

76.    In 1998, immediately upon their arrival in the United States, Tania was hospitalized for two weeks at an eating disorders clinic in Livingston, NJ, a medical facility that specialized in treating psychiatric eating disorders. There she was diagnosed with Manic Depression. Doctors prescribed Lithium to treat her illness. But, she refused to take it because she wanted to have children and was concerned that Lithium might either impact her ability to do so, or worse, might impact the health of her yet unborn children. Tania became pregnant with the couple's first child, M.K., shortly after being released from the hospital in 1998. The couple moved into a beachfront condo in Long Branch, New Jersey. Even though it was over 2 hours from Alex's work, Tania insisted that the atmosphere seemed to be good for her's health and temperament– things weren't perfect, but they improved tremendously with continued treatments. Their life was good.

77.    With the birth of their first child, the couple's life was on a solid trajectory of upward mobility. Tania's medical condition was being treated appropriately, Alex's career was going well, and the couple was happy. It had always been Tania's dream to have many children, so the couple began working on it. In June 2001, they were blessed with another baby, F.K. By that time, the Kasdans were able to hire a nanny and housekeeper to help Tania take care of the children in order to lighten the load on her and allow her ample opportunity to continue with her psychiatric and dental treatments and therapy.

78.    In 2002, the family relocated to Los Angeles in part so that the children could be closer to Alex's parents, who lived in Santa Barbara, and in part because

19

*Case No.*

1   of better career opportunities due to the deterioration of business opportunities in
2   New York after the 9-11 Tragedy, which Alex witnesses firsthand. Throughout the
3   course of the marriage, Tania's mother frequently visited the family in the United
4   States. This continued even after the Kasdan's moved to the West Coast.

5       79.     The couple's third child, S.K. was born in 2003, followed by their son,
6   C.K. in 2006. By this time, the family also had two dogs and two cats. The couple's
7   life revolved around their children, schools, sports, art school, camping, taking the
8   children to the theater, movies, birthday parties, etc. Given Tania's health issues and
9   resulting inability to focus on household matters, Alex was responsible for taking
10  the children to doctors, dentists, schools, after-school activities, as well as managing
11  finances, insurance, etc.

12      80.     Although, at various times during the marriage, Alex would have liked
13  to have a second income, and at various times encouraged Tania to get a job or get
14  involved in other activities, Tania was always adamant that she wanted to be an
15  "at-home" mom. Plaintiff abided by her wishes, and fortunately generated sufficient
16  income so that it was possible for her to do this. By 2009, Alex's business, an
17  investment banking and real estate advisory firm, was finally getting significant
18  positive traction and the family was doing pretty well.

19      81.     Then, things took a turn for the worse. Over the years, Tania
20  underwent treatment with more than 10 different psychiatrists in New York, New
21  Jersey, Boston and Los Angeles, all with intermittent results. At times Tania's
22  progress was substantial. But, Tania's bulimia and anorexia are chronic and
23  progressive diseases. By 2009, the problems caused by her illness were
24  compounded by her increasing use, and abuse, of alcohol. It bears note that there is
25  a huge co-morbidity correlation between eating disorders and alcoholism. It is
26  common for people suffering from bulimia and anorexia to devolve into alcoholism.
27  Eating disorders are debilitating diseases affecting all aspects of the victim's life and
28  family relationships. This is exactly what happened to Tania. Throughout the

**COMPLAINT FOR DAMAGES**
*Case No.*

1  marriage, Alex undertook numerous activities with the children, including skiing,

2  family vacations, soccer, camping, etc. on his own, because Tania was either unable

3  or refused to do so because of her deteriorating condition. Finally, in September

4  2009, she was hospitalized at the Resnick Psychiatric Hospital at UCLA because of

5  her eating disorders.  In November 2009, Tania also had to undergo an abdominal

6  surgery for a prolapsed rectum, a complication resulting from her long history of

7  eating disorders.

8     82.     By December 31, 2009, Alex and Tania had been together and happily

9  married for a little over 12 years.  They had four wonderful children together, three

10  girls, 10, 8 and 6, and a little boy of 3.

11    83.     On December 31, 2009 – only two months after her hospitalization,

12  Tania called Alex at work. Alex could immediately tell something was wrong, and

13  he was worried. Tania was very upset and agitated. She claimed the neighbors had

14  complained to her about the children playing in the street. Tania started yelling and

15  screaming at Alex over the telephone saying she "can't deal with this anymore." He

16  didn't know what she meant, and was concerned for her safety and the safety of the

17  children. Alex rushed home. He arrived there at approximately 1:00 p.m. and found

18  Tania in the kitchen very agitated and obviously inebriated, with an almost finished

19  bottle of wine next to her. Alex left her alone, and went outside with their son, C.K.

20  to vacuum the car in preparation for their annual family trip – which was scheduled

21  for the next day. His oldest child, M.K., then 10 years-old, came out and said Tania

22  demanded to speak to him. Alex went inside and found Tania downstairs in the

23  kids' bedroom, lying in bed with the covers over her head pouting. She told him,

24  "No more holiday party. Take the kids and go to your parents." Alex replied that his

25  parents, whom Tania had invited to the party almost a month before, were already

26  on their way from Santa Barbara. The exchange escalated into a verbal argument.

27  During the argument, the child F.K. threw a small, rubber ball which hit Alex in the

28  back. Plaintiff turned around and brushed F.K. away with an open palm. F.K. was

**COMPLAINT FOR DAMAGES**

*Case No.*

1  not injured in any way, but she began crying. Tania told Plaintiff to get out of the
2  house and go to his parents, saying, "We don't want you here." Plaintiff left, as
3  requested, and drove to the store. After allowing Tania to "cool off" for a short
4  time, Plaintiff returned to the home to find two police officers there.

5       84.    Plaintiff spent the next 3-4 hours handcuffed, speaking to the police in
6  the driveway and locked in a police cruiser. The police also interviewed all present,
7  including Plaintiff's wife and all 4 children. Plaintiff was not arrested, nor criminally
8  charged for any wrongdoing but was advised to spend the night "elsewhere" to
9  diffuse the situation. Plaintiff was unable to find a hotel as it was New Years Eve.
10  He spent the night in his SUV about a block away from the family home.

11      85.    During the night, Barbara Smith, a DCFS investigator, came to the
12  home and spoke to Plaintiff's wife (Tania) and the children, who denied there had
13  been any violence in the home. Smith completed the interview and left the home at
14  about 3:00 a.m. the morning of January 1, 2010.  She left the children in the home at
15  that time.

16      86.    Thinking that his private family issues with his wife had resolved,
17  Plaintiff returned to the house the morning of January 1, 2010, and spent the balance
18  of the morning with his wife and children packing and preparing for the family ski-
19  trip to Mammoth they had planned weeks before. When he was done packing,
20  Plaintiff took his children to Palisades Park to give Tania a little more time alone to
21  rest. After a wonderful day with his children at the park, Alex headed home at about
22  4:00 p.m. On his way home, he stopped by CVS Pharmacy to buy some snacks for
23  the children and some bottled water for the long drive up to Mammoth. While he
24  was at CVS, Alex received a frantic call from Tania. She was in a panic.  Alex
25  asked her to calm down and explain what was wrong. Tania said that Barbara Smith
26  had called her on the phone and ordered her to not allow Alex back into the home,
27  and to call 911 if he tried to come into the house. Ms. Smith also told Tania that she
28  was coming over to the house right away. Concerned, and not understanding exactly

1  what was going on, Alex rushed home with his children. This was the last time Alex

2  would spend the day alone with his children – perhaps *forever*.

3      87.    At approximately 5:00 p.m. that same day, two Los Angeles Police

4  officers came to the house accompanied by Social Services Agent Barbara Smith,

5  and two others. The Social Workers ordered Plaintiff to leave his home. They had

6  no warrant or properly obtained court order giving them authority to do this. They

7  claimed they had a "restraining order." But, this was a lie. The Social Workers

8  stated that they were – then and there – detaining the children from his care and

9  custody. Alex thought the entire circumstance and Smith's claim of authority to

10 seize his children was unlawful and improper, and he told her so. He told Smith that

11 the restraining order box "Stay Away from Property" was not marked, and as such,

12 she had no authority whatsoever to order him out of his own home. Smith became

13 angry and incensed. She became visibly hostile toward Alex. She scribbled the

14 address of the dependency court and the date of Detention Hearing of Jan 6, 2010,

15 at 8:00 am, on a scrap of paper and said: "there is your Notice, you'd better be at

16 the hearing; and until then you'd better do as I say, and stay away." Alex told Smith,

17 in essence, that he scrap of paper was not a properly obtained court order, there was

18 no danger to his children or his wife, and that she had no authority to issue any

19 proclamations and commands without first obtaining a court order or warrant. Smith

20 became extremely angry when her authority was properly challenged. She

21 threatened Alex that if he disobeyed her orders, she would have the police arrest

22 him on the spot, and he would lose his children. The police officers moved in close

23 to Alex in a menacing manner.  He spoke to his wife in Russian, to assuage her

24 concerns about the developing situation, and began walking down the driveway to

25 leave as ordered.

26      88.    As Alex walked out to the driveway followed by the LAPD and

27 Defendant Smith, he tried to get her to explain to him what was going on, and what

28 the basis was for her seizure of his children, separation from his family, and the

**COMPLAINT FOR DAMAGES**

*Case No.*

1  ouster from his family home. He said, "Come on, this is all one big

2  misunderstanding. Look at the SUV (a Denali XL) packed to the gills with ski gear;

3  we are going to Mammoth tomorrow. The kids have been waiting for this trip all

4  year. Don't you think if I were a danger and the kids were afraid of me, they

5  wouldn't want to go?" Smith responded in an irritated, aggressive, and angry tone,

6  "You are not going anywhere. I know plenty of people that take their kids skiing

7  and kill them when they come back." Smith yelled at Alex and accused him of being

8  crazy. She said he should be under the care of a psychiatrist.

9       89.    Without a warrant, consent, or exigent circumstances Smith seized all 4

10  children from Alex's care, custody, and control. He was ordered by the social

11  worker to refrain from returning to his own home. Smith told Alex that the children

12  would be taken from their mother if he returned to the home. The worker also

13  ordered Alex to refrain from even visiting – and that if he did, she would put the

14  children in foster care placement. Alex followed her orders until the night of January

15  5, 2012 when Tania had the car crash with the kids. All of them were seriously

16  injured.

17       90.    A week later, on January 6, 2010, on information and belief, the

18  Department of Children and Family Services [hereinafter DCFS] through its

19  Defendant social workers Pauline Davis, and Pamela Barrisfiled a juvenile

20  dependency petition against Tania, Alex, M.K., F.K., S.K. and C.K. The petition

21  alleged that Alex had "physically abused F.K.," and that the family had a "history of

22  domestic violence." These allegations were totally baseless and false. The petition

23  was signed under penalty of perjury, yet the social worker who signed the petition

24  knew the allegations of the petition were false or reasonably should have known that

25  the allegations set out in the petition and attested to under penalty of perjury were

26  false.

27       91.    On the evening prior to the adjudication of the petition, Tania was

28  involved in a single car accident with all four children resulting in severe injuries to

**COMPLAINT FOR DAMAGES**

*Case No.*

1   all, including broken bones. Tania did not appear at the hearing because she was
2   still in the hospital unconscious, intubated and heavily sedated. Social workers and
3   minors' counsel at the hearing intimated that Tania had been injured by Alex, in
4   some manner, not as a result of crashing her car. They failed to disclose to the court
5   that Alex was not even present when the accident happened because they had
6   ordered him to stay away. In later proceedings Defendants even went so far as to
7   falsely claim that Alex beat Tania up while she was driving, and that was the reason
8   for the crash.  All of these statements and renditions of the events were lies
9   calculated by the Defendants to deceive the Court as part of their malicious effort to
10  strip Alex's children from his care and rip his family apart. The actual cause of the
11  accident – and Defendants knew this – was that Tania suffered a seizure – due to
12  her illness – that caused her to have seizures, lose consciousness and crash. She was
13  not inebriated at the time of the accident. Even though there was no evidence at all
14  to support Defendants' concocted story, the children were not released back into
15  Alex's care. Instead, Defendants, continued to falsely assert that Alex battered his
16  wife of 12 years, and was a danger to his children.

17      92.     Instead of thanking the DCFS for having kicked him out of his home,
18  stolen his children and ruined his life and family, as well as  "accepting
19  responsibility" and "feeling remorse" (two of the many things the DCFS told Alex
20  he needed to do) for "crimes" that Alex had never committed, but that would have
21  nicely justified the baseless taking of the children by the County and the DCFS,
22  Alex told the DCFS in no uncertain terms that he was going to expose their
23  wrongdoing and sue them.

24      93.     On January 21, 2010, Tania appeared in court with the assistance of a
25  Russian language interpreter. The children remained detained and both parents were
26  granted monitored visitation, but were not to visit at the same time. Still, there was
27  no *true* evidence to suggest that Alex was a danger to anyone; and, the social
28  worker defendants suppressed the true facts about Tania's chronic and debilitating

25

**COMPLAINT FOR DAMAGES**

*Case No.*

1  illness, including the fact that it was her illness that were the cause of all the injuries
2  to herself and her children.

3       94.     On April 8, 2010, DCFS through its social workers Timmie Saltzman,
4  Jamie Hein, Eleazer C. Degbor, and Priscilla Ashburn filed a first amended petition
5  which alleged that Tania had a history of eating disorders as well as alcohol abuse
6  *and* that Mr. Kasdan had failed to protect the children from Tania's alcohol use all
7  of which placed the children at risk of harm. While it was true that Tania had a long
8  history of eating and mental disorders, it was completely and totally false that Alex
9  had ever failed to protect the children or placed them in any risk of harm – and the
10 social workers knew it. The only time the children ever suffered any harm was
11 when these social workers threw Alex out of his own home and separated him from
12 his family without just cause, exigency, or a warrant. This amended petition was
13 also signed under penalty of perjury. As before, the social worker who signed the
14 petition, on information and belief, knew the allegations of the petition were false –
15 at least as to plaintiff herein, or reasonably should have known that the allegations
16 set out in the petition and attested to under penalty of perjury were false.

17      95.     The social study report prepared for the jurisdiction hearing contained
18 statements which were attributed to Alex, Tania, and the children which were totally
19 false attributions – meaning nobody ever said the things that were being attributed to
20 them. Defendants Jamie Hein and Timmie Saltzman, the social workers who
21 prepared the report, simply made up false stories that fit their purpose – which was
22 to punish Alex for his insolence and to teach him to challenge their authority. Both
23 Tania and Alex, and even the children repeatedly denied that there was domestic
24 violence in the home, but the social workers refused to report the truth, and instead
25 reported – based on Defendants' lies and concocted story – that the family
26 presented as a "classic" domestic violence household where the Plaintiff "exerted
27 all the power and control and the wife minimized or denied the abuse." Tania's
28 denial of any abuse was maliciously and falsely portrayed as "evidence" of the

1   Defendant's so called "classic example." Social workers Jamie Hein and Timmie
2   Saltzman, made it her agenda to consistently and continuously present her
3   knowingly false "story" to the juvenile dependency court as part of their malicious
4   effort to rip this family apart. Despite many statements from all the witnesses they
5   interviewed, and the fact that they did not have one iota of *true* evidence to support
6   Defendants' unreasonable position, and the DCFS agency, continued to press the
7   false claim that Plaintiff had failed to protect his children. In fact, the children were
8   injured under DCFS's control and only after Defendants had ordered Mr. Kasdan to
9   stay out of his home and away from his wife and children.

10        96.    A police report dated February 5, 2010 regarding the New Year's Eve
11   incident states that Tania told the investigating officer that she had been under a lot
12   of stress and began to argue with Alex when he came home from work. During the
13   argument, she pulled a blanket over her head. Tania told the officer that Alex pulled
14   the blanket off of her but never struck her. In the social worker's Report,
15   Defendants falsely stated to the juvenile court that Alex was a "batterer" with an
16   anger management problem whose family had to be protected from him. These
17   allegations were totally false, and the social worker defendants knew it at the time
18   she filed her report with the court.

19        97.    Plaintiff's eldest child M.K., who was 10 years-old at the time of
20   detention, when interviewed by the social worker denied that there was any violence
21   in the home, that her mother had ever called the police before, and that she was in
22   any way afraid of her father. She also denied ever seeing either parent hit the other.
23   Yet, all of this critical exculpatory information was either misrepresented to the
24   court or suppressed completely.

25        98.    The second oldest child, F.K., who was 8 years-old at the time, told
26   virtually the same story as her sister. She said that after she started crying, Tania got
27   up and went upstairs. When asked if her father had ever hit her before, F.K. denied
28   that was abused or struck in any way other than an age appropriate spanking on the

1    "butt." She also stated she had never seen her father hit her mother nor her mother

2    hit their father.

3        99.    Despite the evidence contradicting their allegations and in spite of the

4    minors' pleas to remain at home with their parents, DCFS and CLCLA attorneys

5    joined with the Social Worker Defendants, who were friends of many years (on

6    information and belief) to press Defendants' knowingly concocted story, even

7    though Defendants, and each of them, knew or reasonably should have known the

8    story was false. As a result, the juvenile court was deceived, and the children were

9    detained from Alex based on the false claims of "physical abuse which caused the

10   minor[s] unreasonable pain and suffering" and a "twelve year history of domestic

11   violence." Based on these lies, the juvenile court continued to detain the children.

12       100.   Tania did not speak fluent English, yet Defendants claim to have

13   interviewed her, and that during that interview Tania "said" Alex abused the family

14   pets. The allegations contained in the reports were patently false. Tania repeatedly

15   denied she ever said any such thing. At no time did investigating social workers or

16   any other defendant ever provide a Russian language translator for Tania even

17   though she repeatedly requested one. The social worker investigators performed

18   exhaustive investigations into the allegations of "pet abuse," including contacting

19   veterinarians in New Jersey and California. There were no records of any injuries to

20   the pets (three different dogs, including a 175 lbs. mastiff) – and, as it turned out,

21   this was just one more example of DCFS's witch hunt and vendetta against Alex,

22   who in the eyes of the DCFS dared to stand up and question their actions and

23   authority. Despite the total lack of evidence supporting the allegations of intentional

24   physical abuse of the children or any domestic violence, DCFS, through its social

25   workers, wrote a scathing report about the Plaintiff, falsely alleging a "12 year

26   history of domestic abuse" and claiming Alex had "beaten" Tania, the family pets

27   and the children. None of it was supported by any evidence. All of the statements

28   were false and Defendants, and each of them knew it.

1    101.   The children, meanwhile, were despondent and begging to come home.

2    They wrote letters to both parents stating how much they loved and missed them

3    and beseeched their parents to bring them home and out of foster care. Over time,

4    the children's behavior began to deteriorate in foster care and Alex gradually came

5    to the realization that the children would only be returning home if he permanently

6    moved out of the family home, as Defendants had commanded him to do.

7    102.   On August 19, 2010, Alex filed a Forensic Psychological Evaluation

8    Report conducted and written by Nancy Kaser-Boyd, Ph.D., who is an evaluator on

9    the court's Evidence Code 730 psychological evaluator' list and a well-known

10   expert in domestic violence issues throughout southern California. In the Report, Dr.

11   Kaser-Boyd gave the test results of a widely used tool, called the MMPI-2 and

12   MCMI-III personality tests as well as the Rorschach, the Child Abuse Potential

13   Inventory (CAP-I) and the Parenting Stress Index. Mr. Kasdan was seen three times.

14   She also reviewed the court file and performed collateral interviews with Dr. Jayne

15   Major, Ph.D., the parenting class instructor where Tania and Alex attended

16   parenting classes, Dr. Ilene Val-Essen, Ph.D., Tania and Alex's marital therapist

17   and Dr. Vladimir Lipovetsky, M.D. to whom she had referred Alex for evaluation

18   and treatment. Alex's test results indicated that he did not fit the profile, nor was he,

19   a "batterer." Dr. Kaser-Boyd described Alex as having an "even temperament."

20   Further, she wrote, Alex did not show any typical profile characteristics of a child

21   abuser. In spite of all this, based on social worker Defendants' directives, Alex

22   completed a 52-week Domestic Violence program – even though there was no

23   evidence to suggest that Alex any "domestic violence problem." The director of

24   that program, Dr. Gordon, wrote a letter to the social worker wherein he went out of

25   his way to differentiate Alex's situation from a "classic domestic violence couple,"

26   saying he felt that Alex and Tania did not fit that description. Despite Dr. Kaser-

27   Boyd's credentials and experience in the dependency courts, Defendants, and each

28   of them, discounted her opinion entirely because it was at odds with their own

**COMPLAINT FOR DAMAGES**

*Case No.*

1  version of the facts. They urged the court not to accept it and *falsely* claimed it was
2  unreliable. Alex also provided a report from his own treating psychiatrist who was
3  also of the same opinion regarding Alex's lack of any penchant for domestic
4  violence or anger control issues, and these too were rejected and or downplayed by
5  the Defendants, who knowingly and intentionally failed to disclose this critical
6  exculpatory evidence to the juvenile court. Further, Dr. Jim Gordon, the director of
7  the Domestic Violence program attended by Alex opined much the same and went
8  out of his way to state that Defendants misstated and misconstrued his opinions to
9  the court – *i.e.*, that Defendants were lying to the juvenile court.

10  103.  On October 1, 2010, following an extensive trial over the course of
11  several days, the court sustained an amended petition for the "physical abuse" of
12  only one child by Alex, "domestic violence" in the home and a history of emotional
13  problems including anorexia and use of alcohol by Tania which had exacerbated the
14  domestic violence between the parents, all of which placed the children at risk of
15  serious harm. All of this was based on the perjured testimony of Defendants, and the
16  knowingly fabricated evidence submitted by them. In later proceedings, these same
17  Defendants falsely claimed that Alex perpetrated massive violence against his wife
18  and children, even though no such findings had ever been made, and even though
19  there was never any truth to Defendants' sworn allegations.

20  104.  The campaign to falsely malign Alex and strip his family from him
21  based on fabricated evidence and pure hocum continued. In a September 22, 2011
22  Status Review Report Defendants falsely state, "[Tania] appears to be a very
23  capable woman but she continues to enable the father's power and control.  She
24  stays the victim." Tania was never a victim, and Defendants know it. They continue
25  to make false statements to the court because they have been frustrated by Alex and
26  his approach to their shenanigans. They want to punish him for what they perceive
27  to be his arrogance, and stripping away his family is how they are doing it.

28

1    105.   The more, Alex protested the Defendants' false allegations and

2    unsupportable attacks on his character, the harder Defendants, and each of them,

3    falsely maligned him to the Court. As a result of the false and malicious allegations

4    and other misconduct by the Defendants, and each of them, Alex has been deprived

5    of the companionship of his children for over two years – and counting.

6    106.   Defendants reports, that continue to be filed even now, deliberately

7    exclude positive information about Alex, his progress and his visits with the

8    children, and continue to downplay Tania's own erratic, disruptive behavior both at

9    visits and outside of court, instead, focusing on catching Tania and Alex together (as

10   if it were a crime for a married couple to be together) and concocting elaborate

11   stories to support their own version of events.

12   107.   Early on, without having conducted any investigation, Defendants

13   demanded that Tania move to an undisclosed, confidential domestic violence shelter

14   to "protect" the children from Alex. When Tania refused, Defendants insisted Tania

15   obtain a restraining order against Alex in order to have the children returned to her

16   care. Tania did so, but only because they threatened that she would lose her children

17   forever if she did not comply. But, even after she did as Defendants commanded,

18   Defendants refused to return her children. So, after realizing they were lying to her,

19   she asked that the order be rescinded. She admitted that the purpose for it was only

20   to appease Defendants and get her children back. Throughout, the Defendants and

21   minors' counsel made it clear to Tania that as long as she were married and together

22   with Alex, they would not return her children to her. The couple complied, by

23   keeping different residences, which ruined the family financially. To appease

24   Defendants, and in an attempt to regain her children, Tania even went so far as to

25   enroll in a sober living facility, staying there at night while continuing to reside with

26   Alex during the day in the family home.

27   108.   Defendants were angry that these parents loved each other so much

28   and wanted to stay together. So, they punished them every time it was discovered

*Case No.*

1  they were still together. Defendants became obsessed with breaking them up and
2  would not rest until this was accomplished, to the detriment of the entire family.
3  (One explanation for this was the CSW's personal animosity toward Alex, to which
4  she admitted under oath at trial.) Alex had become increasingly frustrated with what
5  he saw as the total destruction of his family and its financial health and lashed out at
6  the Defendant in an email by referring to her obvious plastic surgery. Alex had also
7  been insulting to minor's counsel, Patricia O'Connell, who joined Saltzman in her
8  hatred of Alex by engaging in long, personal tirades against Alex on the record,
9  calling him names such as "evil," "a bullie," and likening him to "the unibomber,"
10 Ted Kazinski, a man who murdered many innocent people. Such behavior on the
11 part of the Defendants is indicative of their complete abandonment of
12 professionalism and their willingness to do or say anything to destroy Alex's family
13 at the cost of the children they were assigned to protect. The acts and omissions of
14 these Defendants, and each of them, violated Alex Kasdan's rights to familial
15 association and due process arising under the First and Fourteenth Amendments of
16 the United States Constitution.

17        109.   Alex is informed and believes and thereon alleges that Defendants, and
18 each of them, unjustifiably, unlawfully and maliciously retaliated against him, by
19 punishing and attacking him, and the very children they were supposed to protect.
20 For example, though MINORS had been enjoying their visits with their Alex and
21 desperately wanted to go home, CSW Saltzman ensured that such visits were cut off
22 and that Alex would have zero contact with his children for over 2 years and
23 counting. Even as recently as the week before this complaint was filed Defendants
24 denied Alex court ordered visitation with his children. The Social Worker
25 Defendants, and each of them, were aided, abetted and encouraged by each of the
26 remaining defendants. Alex is informed and believes and on such basis alleges that
27 this was done as means of punishing Alex for insulting them, for advocating for
28 family's needs too strongly, for complaining too much, for threatening to pursue his

32

**COMPLAINT FOR DAMAGES**

*Case No.*

1 | legal remedies, involving the media, and for insulting the social workers and minor's
2 | counsel in the underlying juvenile dependency case.

3 | 110. Alex is informed and believes and on such basis alleges that at some
4 | point, the Defendants, and each of them, cooked up a plan to force Tania Kasdan to
5 | leave Alex and deprive him of ever seeing his children again. Defendants, and each
6 | of them, knew their statements to the court were false when they made them. Yet,
7 | they engaged in a pervasive pattern of judicial deception as part of the larger overall
8 | scheme to work together to teach Alex a lesson for making their lives difficult.

9 | 111. Previously glowing reports of Alex's relationship with his children and
10 | their visits up until 2011 transformed- practically overnight- into venomous
11 | accusations that he "failed to show progress" in addressing his violent temper and
12 | that his children would never be safe with him. They not only made these negative
13 | reports to the court, they actively alienated not only his wife but Alex's children
14 | from him, turning them into virtual strangers eventually. Minor's counsel requested
15 | no visits between Alex and his children during the reunification period, despite her
16 | client's own testimony in chambers that they wanted visits with him in a therapeutic
17 | setting, which was contrary to the law and contrary to her ethical duties as minor's
18 | counsel, that is to protect their family relationships wherever possible and advocate
19 | for her clients' wishes and best interests. Further, the CSW in charge refused to
20 | have direct contact with Alex, which virtually cut off all communication between
21 | them and then, admitted on the stand that DCFS made zero effort to contact him, his
22 | attorney or his therapists for over a year during the reunification period. Then,
23 | despite having zero information about Alex and his progress or participation in any
24 | programs, submitted a report to the court recommending that he not be granted any
25 | further reunification services because he had made no progress, would not benefit
26 | from such services, and presented a danger to his children. All of the stated bases
27 | for the recommendations were false, and the Defendants knew it at the time.

28

1    112.   The reporting Defendants knew it at the time they filed their respective

2    reports that the information was inaccurate, false and misleading, but submitted

3    them under oath anyway while maliciously and falsely belittling Alex's efforts to

4    reunify with his family.

5    113.   Defendants' own Title XX Delivered Service Logs prepared by DCFS

6    during the months of February through May, 2011 indicate the children missed Alex

7    a great deal and were saddened by the fact that they could not see him as often.  On

8    February 24, 2011 the entry states, "M.K. told Tania that she is 'stressing' out

9    because 'of what's going on.' Tania asked M.K. 'what's going on.' M.K. responded

10   with 'not seeing dad.'" At a visit with Tania the next day the log states, "M.K. stated

11   she hasn't seen Alex in a month and then started crying." This was all exculpatory

12   information that would have disproved Defendants' statements to the Court, yet

13   Defendants, and each of them, knowingly, willfully and intentionally suppressed this

14   information as part of their effort to deprive Alex of any relationship with his

15   children.

16   114.   Further entries included the following statements: On March 15, 2011

17   M.K. "told Tania to tell Alex she loves him." And on March 25, 2011, "F.K. asked

18   Tania what was Alex's response upon Tania giving Alex the gift from F.K. and

19   Tania said 'he loved it.'

20   115.   Also, Tania said Alex 'was so happy' receiving the gift from F.K..

21   M.K. asked Alex's response to the letter she wrote for Alex (last week) and Tania

22   said 'he loved it.'"

23   116.   Later, the service logs reflect how well Alex's visits had been going

24   and how happy the children were to see him each time: On March 3, 2011 "At the

25   beginning of visitation, minors ran to Alex and hugged him.  Participants appeared

26   very excited to see each other…C.K. sat on Alex's lap, F.K. and S.K. hugged and

27   kissed Alex…C.K expressed he loves Alex and thanked him for all the items he

28   brought.  S.K. expressed her love for Alex…C.K was crying and Alex consoled

**COMPLAINT FOR DAMAGES**

*Case No.*

1  C.K. by holding him close (while C.K. sat in Alex's lap). C.K. said a few times that
2  he loves Alex.  Alex told minors a few times that he loves minors." None of this
3  matter was disclose to the Juvenile Court in the false reports referenced above. Even
4  now Defendants, and each of them, continue to lie to the court as part of their efforts
5  to keep Alex from his children.

6      117.   On March 15, 2011 Alex came for another visit.  The worker wrote:
7  "Alex took pictures of all the kids. The children had fun doing this. They laughed
8  and made funny faces for the camera.  All of the children appeared comfortable with
9  dad. They were able to make eye contact, engage in conversation and told Alex they
10 loved him several times throughout the visit." On April 26, 2011, the DCFS Service
11 Log indicates Alex had a monitored visit where "All of the children were happy to
12 see dad.  They each gave dad a hug and a kiss and told him that they missed him."
13 Social worker defendants suppressed all of this information from the Juvenile
14 Dependency Court, and instead falsely reported that the children's visits with Alex
15 "upset them," and requesting that the court order all visits with Alex be stopped. It
16 was in fact the Social Workers themselves who upset the children so. Based on
17 these Defendants lies, the court made an emergency order suspending Alex's
18 visitation. Thereafter, based on their prior false allegations, Defendants
19 recommended that the court permanently deny Alex visitation with his children. He
20 hasn't seen his children since.

21     118.   In November 2011, at the behest of Defendants, and each of them,
22 Tania Kasdan began fabricating claims against Alex and assisting the social workers
23 in their scheme to deceive the juvenile court with lies. She did this because the
24 Defendants promised her that if she did what they said to do, they would give her
25 the children back.

26     119.   Even though the police officers assigned to the initial investigation
27 back in 2010, concluded in a written report that no crime had occurred, and that the
28 explanation given by Alex that fateful evening was consistent with the statements

35

**COMPLAINT FOR DAMAGES**

1   provided by Tania and the children; and, even though no criminal charges were ever

2   filed against Alex in connection with the supposed domestic violence or physical

3   abuse allegation, Alex has lost contact with his children at the hands of these

4   Defendants who have employed a campaign of hatred against him.

5        120.   As a direct and proximate cause of the malicious conduct of these

6   Defendants, and each of them, Alex has suffered great stress and depression and

7   financial loss. Alex's family has been destroyed, his entire business is gone, as is his

8   home and his family. He has been unable to work as he has tried to fight for their

9   return, grieve the loss of his relationships with his children and the time he has

10  missed seeing them grow during the past 2 and a half years.

11       121.   Alex was always very involved in the lives of all of his children. This is

12  well-documented in over 50,000 photos and videos. Alex always attended all of the

13  children's extracurricular events in school, took the children skiing in Big Bear, Mt.

14  Baldy and Mammoth, took the three girls to Hawaii for vacations, was always

15  involved in the YMCA Indian Guides and AYSO soccer with the kids. Alex always

16  attended every parent-teacher conference for each child. Tania attended none.  Alex

17  submitted witness letters to Defendants from various people who all spoke

18  glowingly about Alex and his relationships with his children.  None of these people

19  were interviewed by the Defendants. And, none of this information was ever

20  provided by Defendants to the juvenile court.  Rather, it was suppressed. As a result

21  of the conduct of these Defendants, all of that has been destroyed, and Alex is left

22  an empty shell of a man. A total loss.

23  **FIRST CLAIM FOR RELIEF FOR VIOLATION OF CIVIL RIGHTS (42**

24  **U.S.C. §1983)**

25  **(Fourteenth Amendment-Familial Association and Fabrication of Evidence)**

26  **By Alex Kasdan**

27  **Against all Defendants and DOES 1 thru 100 Inclusive:**

28

**COMPLAINT FOR DAMAGES**
*Case No.*

1   122.   Alex realleges, and incorporates herein as if set forth in full, paragraphs

2   1 through 121 above.

3   123.   Alex is informed and believes and thereon alleges that the right to

4   familial association guaranteed under the Fourteenth Amendment is "clearly

5   established" such that a reasonable Social Services Agent and/or police officer in

6   Defendants' – including but not limited to DOES 1 - 100 – situation would know it

7   is unlawful to remove a child from the care, custody and control of its parents or to

8   question, threaten, examine or search a child in the absence of exigent

9   circumstances without first obtaining a warrant, or parental consent, to do so.

10   124.   Commencing on December 31, 2009, and continuing through the

11   present – and probably even after this complaint is filed, Defendants, and each of

12   them, were acting under color of state law when they acted, agreed, and/or

13   conspired to unlawfully remove, detain, question, threaten, examine, investigate

14   and/or search Alex's children from his care. Defendants, and each of them, did so –

15   and continues to do so without proper justification or authority and without probable

16   cause, exigency, or *lawfully* obtained court order. Further, the actions of Defendants

17   were undertaken with deliberate indifference to Alex's rights.

18   125.   DEFENDANTS, and each of them, maliciously conspired to violate

19   Alex's civil rights including violation of Alex's rights found in the Fourteenth

20   Amendment of the United States Constitution, by, but not limited to, seizing,

21   detaining and continuing to detain all of his children from his care, improperly

22   coercing Tania to leave Alex thereby driving a schism in their marital relationship of

23   12 years, all without proper or just cause and/or authority, and by spreading lies,

24   maliciously refusing to provide exculpatory evidence, and presenting fabricated

25   evidence to the court, during the pendency of the juvenile dependency proceedings

26   on a continuous basis even now, all in violation of Government Code §820.21,

27   thereby violating Alex's clearly established Constitutional rights.

28

**COMPLAINT FOR DAMAGES**

*Case No.*

126.   By these actions DEFENDANTS, and each of them, interfered and/or attempted to interfere with Alex's constitutional right to familial association under the Fourteenth Amendment, as well as those rights applicable under California Law rising to the level of constitutionally protected rights.

127.   As a direct and proximate result of DEFENDANTS' actions, Alex has suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Alex has also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

128.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the intent to cause injury to Alex, or acted with a willful and conscious disregard of the rights of Alex in a despicable, vile and contemptible manner. Therefore, Alex is entitled to an award of punitive damages for the purpose of punishing these DEFENDANTS, and each of them, in order to deter them, and others, from such conduct in the future.

**SECOND CLAIM FOR RELIEF - *MONELL*-RELATED CLAIMS**

**By Alex Kasdan**

**Against The County of Los Angeles; and DOES 1 thru 100 Inclusive:**

129.   Alex realleges, and incorporates herein as if set forth in full, paragraphs 1 through 121 above.

130.   Defendant COUNTY, including and through its entity DCFS, established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies"), which policies were the moving force behind  the violations of Alex's constitutional rights, including those under the Fourteenth Amendment of the United States Constitution, by, but not limited to:

**COMPLAINT FOR DAMAGES**

*Case No.*

1           a.     the policy of detaining and/or removing children from their

2  family and homes without exigent circumstances (imminent danger of serious bodily

3  harm), court order and/or consent;

4           b.     the policy of removing children from their family and their

5  homes without first obtaining a warrant when no exigency exists;

6           c.     the policy of examining children without exigency, need or

7  proper court order and without the presence and/or consent of their parent or

8  guardian;

9           d.     the policy of removing and detaining children, and continuing to

10  detain them for an unreasonable period after any alleged basis for detention is

11  negated;

12           e.     the policy of using trickery, duress, fabrications an/or false

13  testimony and/or evidence, and in failing to disclose exculpatory evidence, in

14  preparing and presenting reports and court documents to the Court, causing an

15  interference with Parents' rights, including those as to familial relations; and

16           f.     by acting with deliberate indifference in implementing a policy

17  of inadequate training and/or supervision, and/or by failing to train and/or supervise

18  its officers, agents, employees and state actors, in providing the constitutional

19  protections guaranteed to individuals, including those under the Fourteenth

20  Amendment, when performing actions related to child abuse and dependency type

21  proceedings;

22           g.     the policy of setting forth allegations in Juvenile Dependency

23  Petitions against parents claiming violations of WIC §300(a) through (j), regardless

24  of whether or not reasonable and articulable evidence exists at the time to support

25  the claims set out in the petition under penalty of perjury;

26           h.     the policy, practice or custom of making knowingly false

27  allegations of child abuse, neglect or abandonment in Juvenile Dependency Petitions

28  signed under penalty of perjury as a means of intimidating parents, by coercion, into

**COMPLAINT FOR DAMAGES**

*Case No.*

1    accepting lesser charges, whether or not true, or forcing a parent to adjudicate a

2    matter knowing that the courts most often sustain allegations, whether justified by

3    extant evidence or not, thereby enabling the COUNTY to keep the family in the

4    juvenile dependency system and record the case as a positive outcome for purposes

5    of statistical analysis related to funding by the State and Federal governments.

6              i.      the custom, policy, and/or practice of fraudulently charging

7    parents with child abuse where none exists.

8              (This list is not exhaustive due to the pending nature of discovery and

9    the privileged and protected records of investigative and juvenile dependency type

10   proceedings. Alex reserves her right to amend this pleading as more information

11   becomes available.)

12   131.   COUNTY, including by and through DCFS, breached its duties and

13   obligations to Alex including but not limited to, failing to establish, implement and

14   follow the correct and proper Constitutional policies, procedures, customs and

15   practices; by failing to properly select, supervise, train, control, and review its

16   agents and employees as to their compliance with Constitutional safeguards; and by

17   permitting the DCFS, and DOES 1 through 100, inclusive, to engage in the unlawful

18   and unconstitutional conduct herein alleged.

19   132.   DCFS, COUNTY, DOES 1 through 100, and each of them, knew, or

20   should have known, that by breaching the above-mentioned duties and obligations

21   that it was reasonably foreseeable that they would, and did, cause Alex to be injured

22   and damaged by COUNTY's wrongful policies, or deliberate lack thereof or

23   deliberate indifference to the need for such policies and/or training, and other acts as

24   alleged herein, and that such breaches occurred in the contravention of public policy

25   and their legal duties and obligations to Alex; and that such policies subject them to

26   injunctive relief which Alex asserts herein.

27   133.   These actions, and/or inactions, of COUNTY and DCFS are the

28   moving force behind, and direct and proximate cause of Alex's injuries, as alleged

**COMPLAINT FOR DAMAGES**

*Case No.*

1   herein; and as a result, Alex has sustained general and specific damages to an extent

2   and in an amount to be proven at trial. Alex has incurred, and will continue to incur,

3   attorney fees, costs and expenses, including those authorized by 42 U.S.C. Section

4   1988, to an extent and in an amount subject to proof at trial.

5                 **THIRD CAUSE OF ACTION - INTENTIONAL INFLICTION OF**

6                                   **EMOTIONAL DISTRESS**

7                                        **By Alex Kasdan**

8        **Against COUNTY; SOCIAL SERVICES DEFENDANTS; and DOES 1 thru**

9                                       **100 Inclusive:**

10        134.   Alex realleges, and incorporates herein as if set forth in full, paragraphs

11   1 through 121 above.

12        135.   Alex is informed and believes that, DEFENDANTS and each of them,

13   and DOES 1 through 100, inclusive, and each of them, engaged in the

14   above-mentioned extreme, outrageous, unlawful and unprivileged conduct,

15   including, but not limited to, removing and detaining the minor children from the

16   love and care of their father, Alex, without any lawfully obtained court order or

17   exigent circumstances; continuing to detain the children for an unreasonable period

18   after any alleged basis for detention had been negated; as to the DCFS and

19   COUNTY, questioning and obtaining testimony from Tania through the use of

20   undue influence, coercion and duress; lying to the court to prevent him from seeing

21   the children; intentionally mischaracterizing and disparaging Alex's care of his wife

22   and children to the juvenile court; and, continuing to this day to harass, annoy and

23   vex Alex and otherwise interfere with Alex's life, after any purported exigency or

24   need ceased to exist.

25        136.   Each of the individual DEFENDANTS, and DOES 1 through 100,

26   inclusive, and each of them, participated in, conspired with, approved of and/or

27   aided and abetted the conduct of the remaining DEFENDANTS.

28

**COMPLAINT FOR DAMAGES**

*Case No.*

1      137.   Alex is informed and believes that, DEFENDANTS, and each of them,

2  intended to cause harm to Alex, or acted with a reckless disregard of the possibility

3  that Alex would suffer extreme emotional distress as a result of the conduct listed

4  above.

5      138.   Defendant COUNTY and its entity DCFS is vicariously responsible for

6  the conduct of DEFENDANTS and DOES 1 through 100, inclusive, under

7  California Government Code Section 815.2 and other applicable statutory and case

8  law.

9      139.

10      140.   As the direct and proximate result of DEFENDANTS' extreme and

11  outrageous conduct, Alex suffered extreme emotional and physical distress,

12  amounting to a complete psychiatric disability, including, but not limited to, fright,

13  nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and

14  indignity to an extent and in an amount subject to proof at trial.

15      141.   Alex is informed and believes that, DEFENDANTS, and DOES 1

16  through 100, inclusive, and each of them, acted knowingly and willfully, with malice

17  and oppression and with the intent to harm Alex. Therefore, Alex is entitled to an

18  award of punitive damages for the purpose of punishing DEFENDANTS, and

19  DOES 1 through 100, inclusive, and each of them, to deter them and others from

20  such conduct in the future.

21      **FOURTH CAUSE OF ACTION - NEGLIGENT INFLICTION OF**

22      **EMOTIONAL DISTRESS**

23      **By Alex Kasdan**

24  **Against COUNTY; SOCIAL SERVICES DEFENDANTS; and DOES 1 thru**

25      **100 Inclusive:**

26      142.   Alex realleges, and incorporates herein as if set forth in full, paragraphs

27  1 through 121 above.

28

143. Alex is informed and believes that DCFS, COUNTY, DEFENDANTS, and DOES 1 through 100, inclusive, and each of them, engaged in the above-mentioned extreme, outrageous, unlawful and unprivileged conduct, including, but not limited to, removing and detaining the children. from the love and care of father, Alex, without court order or exigent circumstances; continuing to detain MINORS for an unreasonable period after any alleged basis for detention had been negated; as to the DCFS and COUNTY, manufacturing false and misleading evidence; and mischaracterize and disparage Alex to the juvenile court, and continuing to harass, annoy and vex Alex and otherwise interfere with Alex's life, after any purported exigency or need ceased to exist.

144. Each of the individual DEFENDANTS and DOES 1 through 100, inclusive, and each of them, participated in, conspired with, approved of and/or aided and abetted the conduct of the remaining Defendants, and each of them.

145. Alex is informed and believes that COUNTY, DCFS and DOES 1 through 100, inclusive, and each of them, intended to cause harm to Alex, or acted with a reckless disregard of the possibility that Alex would suffer extreme emotional distress as a result of the conduct listed above.

146. Defendant COUNTY and its entity DCFS is vicariously responsible for the conduct of DEFENDANTS and DOES 1 through 100, inclusive, and each of them, under California Government Code Section 815.2 and other applicable statutory and case law.

147. As the direct and proximate result of DEFENDANTS' extreme and outrageous conduct, Alex suffered extreme emotional and physical distress, including, but not limited to, complete psychiatric disability, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial.

148. Alex is informed and believes that DCFS, COUNTY, DEFENDANTS and DOES 1 through 100, inclusive, and each of them, acted knowingly and

43

**COMPLAINT FOR DAMAGES**

*Case No.*

1  willfully, with malice and oppression and with the intent to harm Alex. Therefore,

2  Alex is entitled to an award of punitive damages for the purpose of punishing DCFS,

3  COUNTY, DEFENDANTS and DOES 1 through 100, inclusive, to deter them and

4  others from such conduct in the future.

5

6  **FIFTH CAUSE OF ACTION - VIOLATION OF STATE CIVIL RIGHTS**

7  **By Alex Kasdan**

8  **Against COUNTY; SOCIAL SERVICES DEFENDANTS; and DOES 1 thru**

9  **100, Inclusive:**

10      149.   Alex realleges, and incorporates herein as if set forth in full, paragraphs

11  1 through 121, above, to the extent relevant.

12      150.   Alex is informed and believes that COUNTY, DCFS and DOES 1

13  through 100, and each of them, are individuals who were acting under color of state

14  law in conducting and investigation and related proceeding and matters described in

15  Government Code Section 820.21(a). Each of the individual DEFENDANTS, and

16  DOES 1 through 100, inclusive, and each of them, participated in, conspired with,

17  approved of, and/or aided and abetted the conduct of remaining Defendants.

18      151.   Alex is informed and believes, and based thereon alleges, that as a

19  result of the conduct of DEFENDANTS, and DOES 1 through 100, inclusive, and

20  each of them, by use of threats, intimidation and coercion (or attempts to threaten,

21  intimidate or coerce), interfered with Alex's exercise and enjoyment of the rights

22  secured by the United States Constitution and other Federal laws, the Constitution

23  and laws of the State of California, and their rights under California Government

24  Code Section 820.21 and California Civil Codes Sections 43, 49, 51, 52 (The Unruh

25  Civil Rights Act) and 52.1.

26      152.   Such conduct includes, but is not limited to:  the wrongful seizure of

27  the MINORS, Alex's children; the unlawful removal and detention of such

28  MINORS.; the continued detention of such MINORS. after any alleged basis for

44

**COMPLAINT FOR DAMAGES**

*Case No.*

1  detention has been negated; the denial of accommodations; the exclusion from a

2  public service or benefit, and the refusal to disclose exculpatory evidence in

3  preparing and presenting reports and documents to the Court in relation to

4  dependency proceedings, all in violation of the right to familial association arising

5  under the Fourteenth Amendment.

6      153.   Defendant COUNTY and its entities DCFS and DOES 1 through 100

7  are vicariously responsible for the conduct of DEFENDANTS and DOES 1 through

8  100, inclusive, and each of them, under California Government Code Section 815.2

9  and other applicable statutory and case law.

10      154.   As a direct and proximate result of the actions of DEFENDANTS, and

11  DOES 1 through 100, and each of them, Alex has suffered, and will continue to

12  suffer, physical, mental and emotional injury, all to an extent and in an amount

13  subject to proof at trial.

14      155.   The rights violated by DEFENDANTS and DOES 1 through 100, and

15  each of them, are protected by the California Civil Code Sections 43, 49, 51 and

16  52.1, which entitle Alex to compensatory and punitive damages, injunctive relief,

17  statutory civil penalty (including $25,000.00 as to each individual defendant) and

18  attorneys' fees, as provided for by the laws and the Constitution of the State of

19  California, and are requested herein.

20      156.   In doing the acts alleged in this complaint, COUNTY, DCFS,

21  DEFENDANTS and DOES 1 through 100, and each of them, knew or should have

22  known that their actions would, or were likely to, injure and damage Alex. Alex is

23  informed and believes, and thereon alleges, that DEFENDANTS and DOES 1

24  through 100, inclusive, and each of them, intended to cause injury and damage to

25  Alex, and/or acted with willful and conscious disregard of Alex's rights, thus

26  entitling Alex to recover punitive damages as against DEFENDANTS and DOES 1

27  through 100, inclusive, and each of them.

28               **SIXTH CAUSE OF ACTION - INJUNCTIVE RELIEF**

**COMPLAINT FOR DAMAGES**

*Case No.*

**By Alex Kasdan**

**Against COUNTY; DCFS; and DOES 1 thru 100 Inclusive:**

157.   Alex realleges, and incorporates herein as if set forth in full, paragraphs 1 through 121, above.

158.   As stated herein, Alex, as a citizen and individual, is protected by the laws of the State of California, as well as those of the United States Constitution, including the Fourteenth Amendment hereto.

159.   As stated herein, Defendants, DEFENDANTS and DOES 1 through 100, inclusive, and each of them, have wrongfully, unlawfully and with deliberate indifference to the rights of Alex, and with complete disregard of DEFENDANTS' and DOES 1 through 100's  duties and obligations to Alex, acted, practiced and/or adopted policies, practices, procedures and/or customs which are in violation of the rights of Alex, including those to be free from governmental interference as to their familial associations and from unreasonable searches or seizures, including those relating to child abuse allegation and related actions and proceedings.

160.   DEFENDANTS and DOES 1 through 100, and each of them, have failed to acknowledge their improper, unlawful and unconstitutional actions, conduct and policies at the time of the incidents ast issue in the present action, and Alex is informed and believes, and on that basis alleges that presently DEFENDANTS have not changed or modified such actions, conduct and/or policies to conform to law.

161.   DEFENDANTS' wrongful and unlawful conduct, actions and/or policies, unless and until enjoined and restrained by order of this court, will cause, and continue to cause great and irreparable injury to Alex, an other individuals and citizens, in that DEFENDANTS and DOES 1 through 100, and each of them, will continued to act in accordance with said unlawful policies, and with deliberate indifference to their duties and obligations under state and federal law, including those under the Fourteenth Amendment as alleged herein above.

**COMPLAINT FOR DAMAGES**

*Case No.*

1    162.   Alex has no adequate remedy at law to prevent or prohibit DCFS and

2  DOES 1 through 100, and each of them, from continuing, and/or repeating, their

3  unlawful and unconstitutional conduct and policies other than through injunctive

4  relief, and therefore seek an order enjoining and prohibiting DCFS and DOES 1

5  through 100, and each of them, from, but not limited to, the following:

6            a.      the policy of detaining and/or removing children from their

7  family and homes without exigent circumstances (imminent danger of serious bodily

8  harm), court order and/or consent;

9            b.      the policy of removing children from their family and their

10  homes without first obtaining a warrant when no exigency exists;

11           c.      the police of examining children without exigency, need or

12  proper court order and without the presence and/or consent of their parent or

13  guardian;

14           d.      the policy of removing and detaining children, and continuing to

15  detain them for an unreasonable period after any alleged basis for detention is

16  negated;

17           e.      the policy of using trickery, duress, fabrications an/or false

18  testimony and/or evidence, and in failing to disclose exculpatory evidence, in

19  preparing an presenting reports anc court documents to the Court, causing an

20  interference with Alex's rights, including those as to familial relations;

21           f.      by acting with deliberate indifference in implementing a policy

22  of inadequate training and/or supervision, and/or by failing to train and/or supervise

23  its officers, agents, employees and state actors, in providing the constitutional

24  protections guaranteed to individuals, including those under the Fourteenth

25  Amendment, when performing actions related to child abuse and dependency type

26  proceedings;

27           g.      the policy of setting forth allegations in Juvenile Dependency

28  Petitions against parents claiming violations of WIC §300(a) through (j), regardless

**COMPLAINT FOR DAMAGES**

*Case No.*

1  of whether or not reasonable and articulable evidence exists at the time to support

2  the claims set out in the petition under penalty of perjury;

3           h.      Aiding and abetting in the violation of civil rights guaranteed to

4  individuals, including those under the Fourteenth Amendment, by engaging in the

5  aforementioned conduct;

6           i.      Conspiring to violate civil rights guaranteed to individuals,

7  including those under the Fourteenth Amendment, by engaging in the

8  aforementioned conduct;

9           j.      the policy, practice or custom of making knowingly false

10 allegations of child abuse, neglect or abandonment in Juvenile Dependency Petitions

11 signed under penalty of perjury as a means of intimidating parents, by coercion, into

12 accepting lesser charges, whether or not true, or forcing a parent to adjudicate a

13 matter knowing that the courts most often sustain allegations, whether justified by

14 extant evidence or not, thereby enabling the County to keep the family in the

15 juvenile dependency system and record the case as a positive outcome for purposes

16 of statistical analysis related to funding by the State and Federal governments;

17          k.      the custom, policy, and/or practice of fraudulently charging

18 parents with child abuse where none exists;

19          l.      violating the protections afforded disabled persons pursuant to

20 the Vocational Rehabilitation Act of 1973, 29 U.S.C. §794, et seq.;

21          m.      violating the protections afforded disabled persons pursuant to

22 the Americans with Disabilities Act, 42 U.S.C. §12131, et seq.; and

23          N.      violating the protections afforded disabled persons pursuant to

24 the California Civil Code as detailed herein.

25          (This list is not exhaustive due to the pending nature of discovery and

26 the privileged and protected records of investigative and juvenile dependency type

27 proceedings. Alex reserves her right to amend this pleading as more information

28 becomes available.)

**COMPLAINT FOR DAMAGES**
*Case No.*

## SEVENTH CAUSE OF ACTION - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, ET SEQ.

### By Alex Kasdan

### Against COUNTY; DCFS; and DOES 1 thrU 100, Inclusive:

163.   Alex realleges, and incorporates herein as if set forth in full, paragraphs 1 through 121, above.

164.   The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and more specifically, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

165.   A "public entity" includes state and local governments, their agencies, and their instrumentalities.  42 U.S.C. § 12141(2).  Alex is informed and believes and thereon alleges that Defendants, and each of them, qualify as public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

166.   Congress directed the Department of Justice to write regulations implementing Title II's prohibition against discrimination.  42 U.S.C. § 12134. Pursuant to this mandate, the Department of Justice issued regulations defining the forms of discrimination prohibited by Title II of the ADA.  28 C.F.R. § 35.130.

167.   Based upon the above and foregoing, Plaintiff alleges that DEFENDANTS, and each of them, are engaging in prohibited forms of discrimination, as set forth by 28 C.F.R. § 35.130(a), 28 C.F.R. § 35.130(b), 28 C.F.R. § 35.130(b)(i), 28 C.F.R. § 35.130(b)(ii), 28 C.F.R. § 35.130(b)(iii), 28 C.F.R. § 35.130(b)(iv), 28 C.F.R. § 35.130(b)(v), 28 C.F.R. § 35.130(b)(vii), 28 C.F.R. § 35.130(b)(vii)(3), 28 C.F.R. § 35.130(b)(vii)(3)(i), 28 C.F.R. § 35.130(b)(vii)(3)(ii), 28 C.F.R. § 35.130(b)(vii)(4)(ii)(7), 28 C.F.R. § 35.130(b)(vii)(4)(ii)(8), 28 C.F.R. § 35.130(d) and 28 C.F.R. § 35.130(g).

**COMPLAINT FOR DAMAGES**

*Case No.*

1    168.   Plaintiff alleges that DEFENDANTS, and each of them, have failed to

2  make reasonable modifications in their policies, practices, or procedures to avoid

3  discrimination on the basis of disability, in violation of 28 C.F.R. § 35.130(b)(7).

4    169.   The acts and omissions alleged herein are in violation of the

5  requirements set forth in Title II of the Americans with Disabilities Act, 42 U.S.C. §

6  12131, et. seq., and the regulations promulgated thereunder, and constitute

7  discrimination on the basis of disability against Alex.

8    170.   Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to

9  grant Plaintiff injunctive relief.  Plaintiff Alex is also entitled to an award of

10  reasonable attorney's fees and costs incurred.

11                                   **PRAYER**

12    WHEREFORE, Alex prays for judgment against Defendants, and each of

13  them, as to all causes of action as follows:

14    1.    Alex demands a jury trial as to the issues triable;

15    2.    General damages and special damages according to proof;

16    3.    Compensatory damages and special damages according to proof;

17    4.    As against only the individual Defendants and not any municipality,

18  punitive damages as allowed by law;

19    5.    Injunctive relief, both preliminary and permanent, as allowed by law,

20  (including preliminary injunctive relief to be based upon a separate application);

21    6.    For a declaration that Defendants, and each of them, have violated the

22  disabled access laws of the United States of America and of the State of California;

23    7.    An order enjoining Defendants, and each of them, from violating the

24  disabled access laws of the United States of America and the State of California;

25    8.    For a declaration that Defendants, and each of them, have violated the

26  Rehabilitation Act;

27    9.    An order enjoining Defendants, and each of them, from violating the

28  Rehabilitation Act;

**COMPLAINT FOR DAMAGES**

*Case No.*

10.    That the Court declare the respective rights and duties of Plaintiff Alex and Defendants, and each of them, with regard to accommodating disabled persons;

11.    An order awarding Plaintiff Alex actual, special and/or statutory damages for each and every violation of Plaintiff Alex's civil rights, per each particular occasion, and for restitution and other equitable relief according to proof, including, an award of up to three times the amount of Plaintiff Alex's actual damages, but not less than $4,000 per offense in damages, pursuant to the applicable Civil Code sections, at her election;

12.    Interest as allowed by law;

13.    Attorney fees and costs of suit incurred herein as authorized by law;

14.    Such further relief as the Court deems just and proper.

Dated: August 7, 2012         ALEXANDER B. KASDAN, IN PRO PER

 

 

 

Alexander B. Kasdan

**COMPLAINT FOR DAMAGES**

*Case No.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV12- 6793 GAF (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

Alexander B. Kasdan, In Pro Per
614 Palisades Drive
Pacific Palisades, CA 90272
310.770.1327 tel
310.496.2434 fax

# FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| ALEXANDER B. KASDAN | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV1 2-6793**-GAF (JEMx) |
| v. | |
| LOS ANGELES COUNTY, ET.AL. | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):       # FOR OFFICE USE ONLY

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __ALEX   KASDAN__, whose address is __614  PALISADES  DRIVE , PACIFIC PALISADES, CA  90272__.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __AUG - 7 2012__

By: __ANN M. MARTINEZ__
Deputy Clerk

*(Seal of the Court)*

1197

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# FOR OFFICE USE ONLY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)<br>ALEXANDER B. KASDAN | **DEFENDANTS**<br>COUNTY OF LOS ANGELES, ET. AL. |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Alexander B. Kasdan<br>614 Palisades Drive, Pacific Palisades, CA 90272<br>310-770-1327 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No      ☑ **MONEY DEMANDED IN COMPLAINT: $** no less than $1,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Civil Rights (42 U.S.C. § 1983)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12-6793**

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date August 7, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |